*In re* A.R. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Elmore R., Respondent-Appellant).

Third District   No. 3—03—0956

Opinion filed September 23, 2005.

Louis P. Milot, of Peoria, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Lawrence M. Bauer and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE O'BRIEN delivered the opinion of the court:

After an adjudicatory hearing, the respondent's children, A.R. and Ax.R. (minors), were found to be neglected by reason of an injurious environment. Following a subsequent dispositional hearing, the respondent was found unfit. The minors were made wards of the court, and the Department of Children and Family Services (DCFS) was appointed guardian with the power to place. The respondent appealed the neglect adjudication, and this court affirmed. *In re A.R.*, 354 Ill. App. 3d 452, 821 N.E.2d 332 (2004) (publication subsequently withdrawn).

In a supervisory order, the Illinois Supreme Court denied the respondent's petition for leave to appeal but remanded the cause for further consideration. *In re A.R.*, 214 Ill. 2d 531, 824 N.E.2d 280 (2005). Having reviewed the cause anew, we now affirm the trial court's finding of neglect.

## I. FACTS

The respondent, Elmore R., is the father of the minors. Jennifer B. is the mother of the minors and the respondent's ex-wife. On June 5, 2003, the State filed a petition alleging that the minors were neglected by reason of an injurious environment. This allegation was based upon the fact that: (1) the respondent left the minors with Jennifer B. while the respondent was serving a jail sentence, even though he knew Jennifer B. had previously been found unfit; (2) the respondent had been experiencing mental health problems; and (3) the respondent was convicted of domestic battery in 2001, after he had obtained guardianship of the minors.

The children were placed in the temporary custody of DCFS, and an adjudicatory hearing was held on October 15, 2003. Evidence of the respondent's mental health history included that in May of 2000, he reported feelings of depression and anxiety lasting several months and had thoughts that he characterized as paranoia. At that same time, the respondent was prescribed psychotropic medication. He was taken off that medication in September of 2000, upon the recommendation of a psychiatrist. An April 2001 evaluation took exception with a prior indication of a psychotic disorder, but did find evidence of some paranoid ideation.

Amy M. testified that she was married to the respondent from 1998 until their divorce in 2002. The respondent exhibited unusual behavior during their marriage, including telling her that people were watching him. The respondent would keep the windows of their residence covered and would turn the computer monitor toward the wall. He would also complain that George Bush was following him and that there were rats in the house with cameras on their tails.

Raelynn Galassi, a DCFS child protection investigator, testified to a June 2003 conversation she had with A.R. about the respondent's behavior. A.R. reported that the respondent thought that people in automobiles with tinted windows were taking pictures of him and that there were cameras in automobile trunks, hubcaps, and stoplights. A.R. also indicated that the respondent believed that people could take pictures through the television and that their house contained rats with cameras on their tails.

The evidence also established that Jennifer B. was found unfit by

reason of excessive corporal punishment in May of 1999 and has remained unfit since that time. The respondent had guardianship of the minors returned to him in October of 1999. In April of 2000, as part of an order discharging wardship, the court ordered that all visitation with Jennifer B. was to be supervised by the respondent or his designee. No unsupervised visits were to be allowed.

Amy M. testified that after their divorce, she went to court to enforce a child support order for the child she had with the respondent. On May 16, 2003, the trial court found the respondent in contempt for his failure to pay the support and sentenced him to jail. In court, Amy M. agreed to care for A.R. and Ax.R. while the respondent was in jail. After his release on May 19, the respondent called Amy M. to ask her to watch the minors for a few extra days while he searched for a job. Amy M.'s caller ID indicated that the respondent was calling from a home shared by Jennifer B. and her mother.

On May 30, 2003, the respondent was once again sentenced to jail. That afternoon, DCFS investigator Galassi asked the respondent where he and the minors had been living prior to his incarceration. The respondent indicated that the three had been living with Jennifer B. and her mother since he had been "kicked out" of his own residence a week before. The respondent indicated that the minors where still living there, and Galassi recommended that they be temporarily placed with Amy M. The respondent agreed, and later that day the minors were removed from Jennifer B.'s home. A.R. confirmed that he, his brother and the respondent had all been living at Jennifer B.'s house before the respondent went to jail. Later, Jennifer B. confirmed that the three had been living with her and her mother for approximately one month.

Finally, the State introduced evidence that the respondent was convicted of domestic battery at a time after custody and guardianship of the minors was returned to him.

After the close of evidence, the trial court found that the petition had been proved in its entirety and that the minors were in an injurious environment. At a subsequent dispositional hearing, the respondent was found unfit, the minors were made wards of the court, and DCFS was appointed guardian with the power to place.

The respondent appealed the neglect adjudication, and this court affirmed. *A.R.*, 354 Ill. App. 3d 452, 821 N.E.2d 332 (publication subsequently withdrawn). The respondent filed a petition for leave to appeal. In a supervisory order issued on March 30, 2005, the Illinois Supreme Court vacated this court's opinion and remanded the cause for further consideration. *In re A.R.*, 214 Ill. 2d 531, 824 N.E.2d 280. Specifically, the order provided:

"The appellate court is directed to consider the effect upon its judgment, if any, of evidence of the apparent presence of the maternal grandmother in Jennifer B.'s home, and whether under such circumstances as the evidence establishes, the minors were left unsupervised with Jennifer B. The appellate court is further directed to adjudicate each issue raised on appeal." *A.R.*, 214 Ill. 2d 531, 824 N.E.2d 280.

## II. ANALYSIS

On appeal, the respondent contends that the State failed to prove an injurious environment in that: (1) there was no evidence that the minors were harmed in any way by living in the house where their mother lived, and (2) the trial court improperly relied upon lay testimony in determining that the respondent had mental health issues that contributed to an injurious environment. We disagree.

■ Children are neglected if their environment is injurious to their welfare. 705 ILCS 405/2—3(1)(b) (West 2002). "An 'injurious environment' is an amorphous concept which cannot be defined with particularity; therefore, each case should be reviewed considering the specific circumstances of that case." *In re M.K.*, 271 Ill. App. 3d 820, 826, 649 N.E.2d 74, 79 (1995). Nevertheless, parents have a duty to keep their children free from harm; thus, their failure to provide a safe and nurturing shelter is statutory neglect. *In re B.J.*, 316 Ill. App. 3d 193, 735 N.E.2d 1058 (2000). It is the State's burden to prove an allegation of neglect by a preponderance of the evidence. *In re N.B.*, 191 Ill. 2d 338, 730 N.E.2d 1086 (2000). That is, the State must demonstrate that an allegation of neglect is probably more true than not. *In re L.M.*, 319 Ill. App. 3d 865, 747 N.E.2d 440 (2001). On review, we will not overturn a trial court's finding of neglect unless it is against the manifest weight of the evidence. *L.M.*, 319 Ill. App. 3d 865, 747 N.E.2d 440. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *In re D.F.*, 201 Ill. 2d 476, 777 N.E.2d 930 (2002).

■ We find that the trial court's adjudication of neglect was not against the manifest weight of the evidence. The respondent had custody and guardianship of his children. He knew that their mother had been found unfit based upon physical abuse and was to have only supervised contact with the minors. Without regard to the possibility of future abuse, the respondent moved his family into a house where the mother was living and left the children in that house when he was to be incarcerated.

While we note that it appears that Jennifer B.'s mother also lived in the home, we do not believe that her presence provided the type of supervision contemplated by the order discharging wardship. There

was no evidence that she was present at all times that Jennifer B. was in the home, nor was there evidence that she closely monitored Jennifer's interaction with the children. There was also no indication that the respondent had made it clear to her that she was to act as his designee. In sum, we agree with the trial court that it was inappropriate for the respondent to place the minors in such a potentially threatening situation. Moreover, we believe that this conduct alone justified the trial court's finding of neglect based upon an injurious environment. See *In re M.K.*, 271 Ill. App. 3d 820, 649 N.E.2d 74 (1995) (a substantial risk of harm is enough to justify a finding of an injurious environment).

In addition, however, the trial court based its finding of neglect in part upon the State's evidence that the respondent was experiencing mental health problems. The respondent contends that the trial court erred in basing its decision on this evidence, because there was a divergence of opinion among several evaluators as to the severity of the respondent's problems. Moreover, the respondent contends that the court improperly relied upon the statements from Amy M. and A.R. to support its findings. We disagree.

The trial judge noted the conflicting evidence but found that a number of the State's psychological reports and all of the statements from Amy M. and A.R. supported the finding that the respondent had some troubling mental health issues. We find no error in the trial court's consideration of the evidence of the respondent's erratic and paranoid behavior. Nor do we find error with its conclusion that this evidence, combined with the presence of Jennifer B. in the home, established an injurious environment. Therefore, we affirm the trial court's adjudication of neglect.

## III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SCHMIDT and BARRY, JJ., concur.