THIRD DIVISION
March 15, 2006

No. 1-05-3627

| | | |
|---|---|---|
| *In re* KENNETH D., a Minor, | ) | Appeal from |
| | ) | the Circuit Court |
| (The People of the State of Illinois, | ) | of Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | No. 05 JA 00012 |
| | ) | |
| v. | ) | |
| Martha L., | ) | Honorable |
| | ) | Robert Balanoff, |
| Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE THEIS delivered the opinion of the court:

Following an adjudicatory hearing, the trial court found that the minor, Kenneth D., was neglected due to an injurious environment and abused due to a substantial risk of physical injury pursuant to section 2-3 of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/2-3(1)(b), (2)(ii) (West 2004)).  At a subsequent dispositional hearing, the court held that respondent, Martha L., was unable for some reason other than financial circumstances alone to care for, protect, train, or discipline the child.  The court made the child a ward of the court and placed him in the custody of the Department of Children and Family Services (DCFS).

On appeal, respondent contends (1) the trial court's adjudicatory findings based on the theory of anticipatory neglect were against the manifest weight of the evidence; (2) the trial court erroneously excluded evidence of respondent's compliance with services after Kenneth was taken into protective custody; and (3) the trial court erred in considering respondent's lack of

prenatal care as grounds for a finding of anticipatory neglect and violated her constitutional right to privacy under the fourteenth amendment. For the following reasons, we affirm the trial court's adjudication of abuse and neglect.

BACKGROUND

Respondent is the mother of four children. Three of her children were born drug-exposed and were in DCFS custody with findings of abuse and neglect. Her fourth child, Kenneth, was born on December 27, 2004. On January 5, 2005, the State filed a petition for adjudication of wardship and a motion for temporary custody. The State's petition alleged that Kenneth was neglected in that his environment was injurious to his welfare and that he was abused in that there was a substantial risk of physical injury by other than accidental means. In support, the State alleged that respondent and the putative father lived together. They had three other children who were in DCFS custody with findings of abuse and neglect. Respondent had two prior indicated reports for substance misuse and had an extensive history of illegal drug use. Respondent had no prenatal care prior to Kenneth's birth. The petition further alleged that in March 2002, a case was opened to provide services to the family, and both parents had not cooperated with services.

On August 22, 2005, the court commenced an adjudicatory hearing with respect to the State's petition. Respondent was not present. DCFS investigator Lanice Kincade-Turner testified that on December 27, 2004, she was assigned to investigate a report that Kenneth had been born exposed to a sexually transmitted disease. Turner was told by respondent that she already had a caseworker and that she was cooperating with services. Kenneth's putative father,

Cedric D., told Turner that he lived with respondent and was the father of all of her children, and expected that Kenneth would be returned home.[1] Turner then spoke with the family's caseworker, Susan Barry. Barry advised Turner that respondent was indeed not involved in recommended services for drug treatment, counseling or parenting skills classes. Turner believed that respondent's last urine drop was in January 2004. Based upon her investigation, Turner sought protective custody of Kenneth due to risk of harm.

Barry, respondent's caseworker, testified that she had been working with the family for the past two years. Respondent had three other children who were involved with DCFS because all three were born drug-exposed. Two of her children were in private guardianship due to respondent's failure to complete services. According to Barry, respondent admitted to her that she had an ongoing drug problem and admitted to smoking a cocaine-laced cigarette right before she gave birth to her daughter, Kylie, on January 6, 2004. Barry further stated that as of the date Kenneth was born, respondent had not cooperated with the recommended services and was still in need of out-patient drug rehabilitation treatment, parenting skills training and consistent random urine drops. Barry stated that respondent submitted to urine drops on June 18, 2004,

[1] The record reflects that Cedric was served with notice of the petition, that he never appeared in the trial court, and that the court ultimately entered a finding that he was unwilling and unable to care for Kenneth. He is not a party to this appeal.

1-05-3627

August 19, 2004, August 26, 2004, September 2, 2004, and January 4, 2005. These tests were negative. Barry requested that respondent submit to weekly urine drops, but respondent told her she was not able to submit every week because she had summer employment with the Chicago Park District and worked 30 to 40 hours per week.

The hearing was then continued to August 29, 2005. Respondent testified and acknowledged that she tested positive for cocaine in September 2002. In May 2004, she enrolled in a drug treatment program, but did not complete the program because she was working for the park district. She reenrolled in September 2004, but did not complete treatment because she was "pregnant, tired, miserable" and "heavy." Respondent further testified that she only sought prenatal care once during her pregnancy with Kenneth because she was uncomfortable taking off her clothes and being "stuck with those needles." She took prenatal vitamins and iron pills left over from her previous pregnancy. She stated that she had no physical problems during the pregnancy, but was experiencing emotional problems.

Respondent further acknowledged that she was supposed to participate in random drug screening. According to respondent, her caseworker would call her regarding drug screening and then she would not hear from her for another month or longer. Respondent testified that she was asked to participate in drug screening in June 2004 and the result was negative. She also testified that in order to work for the park district in the summer, she had to test negative for drugs. No testimony was presented and no medical records were admitted during the adjudicatory hearing by either party with respect to Kenneth's health at birth and whether he was

4

1-05-3627

born drug exposed.[2]

At the conclusion of the adjudicatory hearing, the trial court held that the State had met its burden of proving that Kenneth was neglected due to an injurious environment and abused due to substantial risk of physical injury. The trial court based its conclusion on respondent's failure to seek prenatal care and her failure to obtain and complete needed services. The court noted that respondent's discomfort was not a reason to forgo important prenatal care, and that working full- time and being uncomfortable in pregnancy were not excuses for failing to obtain the necessary drug treatment and other services for the welfare of her child. The court concluded that Kenneth was subject to anticipatory neglect.

At a subsequent dispositional hearing, the trial court found it in Kenneth's best interest to make him a ward of the court, found respondent unable to care for him, and placed him in the custody of DCFS. Thereafter, respondent filed a timely appeal, raising claims of error solely with respect to the adjudicatory hearing.

ANALYSIS

Respondent contends that the court's ruling, that Kenneth was neglected due to an injurious

_____

[2] Indeed, the records admitted at the dispositional hearing from Kenneth's developmental, occupational and physical therapists indicate that Kenneth was born exposed to cocaine and syphilis.

5

environment and abused because of a substantial risk of physical injury, was against the manifest weight of the evidence where the evidence presented by the State was limited to past sibling abuse, and where her drug tests results were negative during and after her pregnancy with Kenneth.

A "neglected minor" includes any minor under 18 years of age whose environment is injurious to his or her welfare. 705 ILCS 405 2-3 1 b  West 2004  In re Arthur H., 212 Ill. 2d 441, 462, 819 N.e.2d 734, 746  2004 . "Neglect" is defined as the failure to exercise the care that circumstances justly demand and encompasses both willful and unintentional disregard of parental duty. In re K.T., 361 Ill. App. 3d 187, 200, 836 N.e.2d 769, 779 2005 . An injurious environment is an amorphous concept that cannot be defined with particularity, but has been interpreted to include the breach of a parent's duty to ensure a safe and nurturing shelter for her children. Arthur H., 212 Ill. 2d at 463, 819 N.e.2d at 746-47. Further, a parent has a duty to keep her children free from harm. In re A.R., 359 Ill. App. 3d 1071, 1074, 836 N.e.2d 375, 378  2005 . An "abused minor" includes any minor under 18 years old whose parent creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function. 705 ILCS 405 2-3 2 ii  West 2004 .

Under the theory of "anticipatory neglect," the State seeks to protect not only children who are the direct victims of neglect or abuse, but also those who have a probability to be subject to neglect or abuse because they reside, or in the future may reside, with an individual who has been found to have neglected or abused another child. Arthur H., 212 Ill. 2d at 468, 819 N.e.2d at 749. Although the neglect of one child does not conclusively show the neglect of another child, the neglect of one minor is admissible as evidence of the neglect of another minor under a respondent's care. 705 ILCS

6

405 2-18 3 West 2004 Arthur H., 212 Ill. 2d at 468, 819 N.E.2d at 750.

Anticipatory neglect should take into account not only the circumstances surrounding the previously neglected sibling, but also the care and condition of the child named in the petition. Arthur H., 212 Ill. 2d at 468, 819 N.E.2d at 749-50. Under this theory, when faced with evidence of prior neglect by parents, the juvenile court should not be forced to refrain from acting until another child is injured. Arthur H., 212 Ill. 2d at 477, 819 N.E.2d at 754.

Cases involving allegations of abuse and neglect are *sui generis*, and must be decided based upon their unique facts. Arthur H., 212 Ill. 2d at 463, 819 N.E.2d at 747. The State has the burden of proving allegations of neglect and abuse by a preponderance of the evidence. In re Faith B., 216 Ill. 2d 1, 13, 832 N.E.2d 152, 159 2005 . On review, a trial court's finding of neglect or abuse will not be reversed unless it is against the manifest weight of the evidence, meaning that the opposite conclusion must be "'clearly evident.'" Faith B., 216 Ill. 2d at 13-14, 832 N.E.2d at 159, quoting Arthur H., 212 Ill. 2d at 464, 819 N.E.2d at 747. We may affirm the trial court's ruling if any of the trial court's bases of abuse or neglect may be upheld. In re Faith B., 216 Ill. 2d at 14, 832 N.E.2d at 159.

Applying these principles to the present case, there was sufficient evidence to support the trial court's findings of anticipatory neglect of Kenneth. The State presented evidence of prior sibling neglect due to respondent's three previous children being born drug-exposed. Only 11 months before Kenneth was born, she gave birth to a drug-exposed infant. Beyond that evidence, the record reflects that between the time respondent's daughter was born drug-exposed in January 2004 and the time Kenneth was born in December 2004, respondent failed to take measures to correct the conditions that brought her previous children into the DCFS system with findings of abuse and neglect.

Inexplicably, no evidence was presented at the hearing regarding whether Kenneth was born drug-exposed. Nevertheless, at the time he was born, respondent had a history of drug abuse, had failed to complete a drug treatment program, had failed to attend recommended parenting classes, and had failed to comply with consistent random drug screening. Although respondent tested negative on the few dates that she chose to comply with drug screening, her compliance over the 11-month period was erratic and inconsistent. According to Barry, respondent acknowledged that she had an ongoing drug addiction. The evidence reveals that by the time Kenneth was born and the State's petition was filed, respondent had made no progress in ameliorating her drug problems and the attendant risks those problems posed to Kenneth. Accordingly, the trial court's findings of abuse and neglect were not against the manifest weight of the evidence.

Next, respondent contends that the trial court erred in relying on her lack of prenatal care as grounds for a finding of anticipatory neglect. Specifically, she argues that the State cannot compel her to submit to medical care and that compelling her to take those measures would violate her constitutional right to privacy. The State and the Office of the Public Guardian maintain that respondent waived this argument because she invited the error. We agree.

Initially, respondent never objected to the allegations set forth in the petition for adjudication of wardship, which included her failure to obtain prenatal care, and never moved to strike those allegations before the trial court. See 735 ILCS 5 2-612 c West 2004 " a ll defects in pleadings, either in form or substance, not objected to in the trial court are waived" . Furthermore, the State had the burden of proof at the hearing and never elicited any evidence on the issue of respondent's prenatal care in its case-in-chief. Indeed, it was respondent who injected the evidence into the proceedings and neither the State nor the Public Guardian followed up on her testimony in cross-examination. A party cannot complain of error

which that party induced the court to make or to which that party consented. *In re Detention of Swope*, 213 Ill. 2d 210, 217, 821 N.E.2d 283, 287 2004 . Illinois courts have applied the invited error doctrine in numerous cases to bar a party from claiming error in the admission of improper evidence where the admission was procured or invited by that party. *People v. Harvey*, 211 Ill. 2d 368, 386, 813 N.E.2d 181, 192 2004 . Accordingly, where respondent failed to object to the allegation, and procured the evidence at the hearing, she has waived her right to complain of any alleged error. Nevertheless, even if the admission of the evidence were erroneous, where the trial court's findings of abuse and neglect were sufficiently supported by other grounds, we would find no reversible error.

Next, we address respondent's contention that the trial court erred in excluding evidence at the adjudicatory hearing of respondent's participation in services after Kenneth was taken into protective custody by DCFS. At the completion of the hearing, respondent made an offer of proof that, if allowed to testify, she would state that she completed parenting classes in the spring of 2005, completed outpatient drug treatment in June 2005, tested negative for drugs in 2005, and visited Kenneth everyday in 2005.

Under the Act, the rules of evidence in the nature of civil proceedings are applicable to the adjudicatory hearing. 705 ILCS 405 2-18 1 West 2004 . Whether evidence is admissible is within the discretion of the circuit court, and its ruling will not be reversed absent an abuse of that discretion. *In re Kenneth J.*, 352 Ill. App. 3d 967, 980, 817 N.E.2d 940, 950 2004 . All evidence must be relevant to be admissible. *Kenneth J.*, 352 Ill. App. 3d at 980, 817 N.E.2d at 950. Evidence is relevant if it tends to prove a fact in controversy or render a matter in issue more or less probable. *Kenneth J.*, 352 Ill. App. 3d at 980, 817

N.E.2d at 950.

In determining the relevance of respondent's conduct after Kenneth was taken into protective custody, we find the case of In re S.W., 342 Ill. App. 3d 445, 794 N.E.2d 1037 2003 , instructive. There, the court addressed a mother's argument that her participation in services after the removal of her child should have been considered at an adjudicatory hearing where the State alleged the child was dependent due to the mother's inability to care for the child. The court rejected the mother's claim, finding that the mother "seems to confuse the adjudicatory hearing and the dispositional hearing." S.W., 342 Ill. App. 3d at 451, 794 N.E.2d at 1042. In making its finding, the court relied upon the supreme court's decision in In re C.W., 199 Ill. 2d 198, 217, 766 N.E.2d 1105, 1116 2002 . Therein, the supreme court stated that

"Evidence that a parent substantially completed offered services,

or otherwise refrained from prior objectionable conduct following removal of

the child, does not somehow absolve or erase the parent's initial failing that

triggered State intervention and removal of the child. Rather, such

evidence is appropriately considered at the second stage of the termination

hearing, at which the court considers whether it is in the best interest of the

minor that parental rights be terminated. At that time, the full range of

the parent's conduct can be considered." C.W., 199 Ill. 2d at 217,

766 N.E.2d at 1116.

Although the court in S.W. recognized that C.W. dealt with a termination of parental rights hearing and not an adjudication hearing involving the abuse and neglect of a child, by analogy it found that the mother's subsequently completed services and subsequent behavior were properly considered at the dispositional hearing,

10

and not the adjudicatory hearing. *S.W.*, 342 Ill. App. 3d at 451, 794 N.E.2d at 1042.

This position is consistent with the purpose of an adjudicatory hearing, which is "to determine whether the allegations of a petition    that a minor under 18 years of age is     neglected    are supported by a preponderance of the evidence." 705 ILCS 405 1-3 1  West 2004 .  Here, as in *S.W.*, we find that respondent's subsequent completion of services after the removal of Kenneth was not relevant to the allegations in the petition, namely, whether at the time Kenneth was taken into protective custody, respondent had a drug problem that made Kenneth's environment injurious and created a substantial risk of physical injury to him.  Rather, her subsequent conduct was properly admitted at the dispositional hearing, where " a ll evidence helpful in determining  the best interest of the child     may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing." 705 ILCS 405 2-22 1  West 2004 .

We further find this position consistent with the Act's stated purpose to insure a just and speedy resolution of abuse and neglect cases.  The Act expressly "recognizes that serious delay in the adjudication of abuse, neglect, or dependency cases can cause grave harm to the minor and the family and that it frustrates the health, safety and best interests of the minor and the effort to establish permanent homes for children in need." 705 ILCS 405 2-14 a  West 2004 . As a result, the Act requires that "an adjudicatory hearing shall be commenced within 90 days of the date of service of process." 705 ILCS 405 2-14 b  West 2004 . Thus, to hold that evidence regarding a respondent's efforts to remediate the problem or evidence that she refrained from prior objectionable conduct following protective custody of a child was relevant to the adjudicatory hearing would be inconsistent with the stated purpose of the statute.  It would encourage the respondent to delay the adjudicatory hearing beyond the stated time frame and thereby potentially frustrate the health, safety and best interest of the child.  Additionally, we note that

a contrary holding would undermine the newly adopted Supreme Court Rule 901 (eff. July 1, 2006 (adopted February 10, 2006)), which includes procedures designed to reinforce strict compliance with statutory deadlines and impose limitations on continuances.

Respondent cites *In re Edricka C.*, 276 Ill. App. 3d 18, 31-32, 657 N.E.2d 78, 87 (1995), in support of her argument that by excluding evidence favorable to her, she was prejudiced in presenting her defense. In *Edricka C.*, the reviewing court concluded that the trial court had erroneously established a "bright-line rule" that all post-petition evidence was irrelevant to the adjudicatory hearing. For example, the court found it was error for the trial court to exclude evidence that after the petition was filed, the child tested negative for an alleged blood disorder because this evidence was indeed relevant to disprove the allegation that the child was medically neglected. *Edricka C.*, 276 Ill. App. 3d at 32, 657 N.E.2d at 87.

We agree with the general proposition of law in *Edricka C.* that there is no bright-line post-petition test for admissibility of evidence. Rather, the test for admissibility of post-petition evidence will depend on whether it is relevant to the allegations in the petition. Compare *S.W.*, 342 Ill. App. 3d at 451, 794 N.E.2d at 1042 (evidence of post-petition participation in services was not relevant to the allegation that child was dependent due to mother's inability to care for child and refusal to take the child home from the hospital), with *In re Edward T.*, 343 Ill. App. 3d 778, 795-96, 799 N.E.2d 304, 318 (2003) (expert testimony regarding child's improved health during post-petition hospital stay was relevant to prove allegations of inorganic failure to thrive). Here, the trial court did not abuse its discretion in finding that evidence of respondent's subsequent participation in services and subsequent remedial efforts were not relevant to the allegations in the petition that, at the time Kenneth was taken into protective custody, his environment was injurious and there was a substantial risk of physical injury to him.

1-05-3627

For all of the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

HOFFMAN, P.J., and KARNEZIS, J., concur.