THIRD DIVISION
March 22, 2006

No. 1-05-3225

In re KAMESHA J., KAWANA S., COREY S., CORTEZ S., and KAYLA S., Minors,

The People of the State of Illinois,

Petitioner-Appellee,

v.

Amy C.,

Respondent-Appellant.

Appeal from
the Circuit Court
of Cook County.

Nos. 04 JA 01097,
04 JA 01118-01120,
05 JA 00051

Honorable
Robert Balanoff,
Judge Presiding.

JUSTICE THEIS delivered the opinion of the court:

At an adjudicatory hearing, the trial court found that respondent Amy C.'s oldest child, Kamesha J,. was physically and sexually abused and that all five of her children, Kamesha, Kawana S., Corey S., Cortez S. and Kayla S., were neglected due to exposure to an injurious environment and abused based on substantial risk of physical injury. At a subsequent disposition hearing, the court ruled that respondent was unable for some reason other than financial circumstances alone to care for, protect, train, or discipline the children. The court made all five minors wards of the court and placed them in the custody of the Department of Children and Family Services (DCFS). Respondent now appeals, contending that (1) the trial court improperly excluded evidence about respondent's current care of Kayla because such evidence was admissible and relevant; (2) the court's finding of anticipatory neglect of Kayla was against the manifest weight of the evidence; and (3) the court's dispositional finding that respondent was unable to care for Kayla, Kawana and Cortez was against the manifest weight of the evidence. For the

1-02-3225

following reasons, we affirm.

Respondent has five children Kamesha, born on January 20, 1994,[1] Kawana, born on December 25, 1995, Corey, born on November 16, 2000, Cortez, born on November 8, 2003 and Kayla, born on December 27, 2004.[2] On September 17, 2004, the State filed a petition for adjudication of wardship to adjudicate Kamesha a ward of the court. The petition alleged that Kamesha was abused and neglected because her environment was injurious to her welfare. On September 16, 2004, Kamesha went to a hospital for numerous severe bruises on her buttocks, lower back and thighs and stated that her siblings' father, respondent's husband Cornell S., had beat her with a belt with her clothes off and scratched her in the face because she had allegedly given away food. During the beating, Kamesha begged respondent for help, but respondent ignored her cries and remained seated in the living room. Kamesha also stated that Cornell had beat her before and that she saw him choke respondent. Kamesha was afraid to return home because she was afraid Cornell would kill her.

---

[1] Kamesha's father is unknown and was defaulted in the trial court.

[2] The father of Kawana, Corey, Cortez, and Kayla is Cornell S., respondent's husband. He was found unable and unwilling to care for his children in the dispositional order, but is not involved in this appeal.

2

The State later amended this petition for adjudication of wardship of Kamesha in April 2005 to add that she was also sexually abused by an "uncle" on September 14, 2004 and had been repeatedly sexually abused by this person. Kamesha had been diagnosed with chlamydia.

On September 22, 2004, the State filed separate petitions for adjudication of wardship of Corey, Cortez, and Kawana. The petition alleged that they were neglected because their environment was injurious to their welfare and created a substantial risk of physical injury to them based on the allegations of physical abuse to Kamesha.

Kayla was born on December 27, 2004. On January 12, 2005, the State filed a petition for adjudication of wardship of Kayla, alleging that she had been neglected because her environment was injurious to her welfare and created a substantial risk of physical injury to her based on the allegations of physical abuse to Kamesha.

On May 10, 2005, the court began an adjudication hearing for Kayla. Avril Anglin with DCFS testified that there were three prior indicated reports for this family. In April 2004, respondent was indicated when Corey was found alone in a park one mile away from respondent. In September 2004, Cornell was indicated for beating Kamesha. Shortly after this report, a third report was indicated when it was discovered that Kamesha had been sexually abused.

Anglin testified that when she took protective custody of Kayla on January 10, Kayla appeared healthy and respondent was cooperative. Anglin believed that it was in Kayla's best interest to take protective custody of her due to these prior indicated reports and because her father, Cornell, was the perpetrator in one of these reports. Anglin was told that Cornell had been living at a different address than respondent since the children's case had been brought into the system. She spoke to Cornell on January 12 and he told her that he had visited respondent and Kayla every day after her birth.

The court then combined the adjudicatory hearings of all five children. Priscilla Cash of DCFS testified that she was assigned to Kamesha's, Kawana's, Cortez's and Corey's case. She spoke with respondent on September 16, 2004 regarding Kamesha's injuries. Respondent knew that Cornell had beaten Kamesha and left marks and bruises all over her body, but stated that she was not there at the time of the incident. The next morning, Kamesha told respondent that she did not feel well, she was in pain, and she did not want to go to school. Respondent then saw the bruises on her body. When asked why she did not take Kamesha to the doctor, respondent told Cash that she was afraid that the truant officer would come after her for not allowing Kamesha to go to school. Respondent sent Kamesha to school that day and told her not to tell anyone what happened.

Cash also spoke to Kamesha on September 16, 2004. Kamesha stated that Cornell beat her with a belt because Kawana told him that Kamesha had given food to neighborhood children. Cornell made her take off her clothes and hold on to a radiator while he beat her. Kamesha stated that respondent was sitting in the living room during the beating. She did not want to return home because she was afraid Cornell would kill her. Kamesha stated that Cornell had beaten her before, but not that badly.

Kristy Garry, the caseworker for Kawana, Cortez and Kayla, testified that she spoke to Kawana on December 7, 2004. Kawana stated that one night that fall, Kamesha got up in the middle of the night and when she did not return after a short time, Kawana went to see what she was doing. Kawana walked past the pantry and saw Kamesha with an adult family friend. His hand was over her mouth and both of their pants were down. Kamesha was present during this conversation with Garry and Kawana and indicated that this incident had occurred. Kawana told Garry that she did not tell respondent about this incident. In a later conversation with Garry, however, Kawana stated that she woke respondent that night and told her what she saw, but that respondent did not do anything about it. Garry spoke to

respondent after this December conversation with Kawana and respondent stated that this friend and his family had been visiting at respondent's house and slept over because of bad weather. Respondent indicated that she did not know about this incident.

Garry testified that her agency recommended respondent complete individual therapy, parenting classes, a domestic violence assessment, a parental capacity assessment, a psychological evaluation, a budgeting program and a vocational assessment. Respondent completed a vocational assessment in May 2005, psychological evaluation in March 2005, parenting classes in March 2005, and a domestic violence assessment in December 2004. She was participating in individual therapy. She also visited with the children, under Garry's supervision, weekly. Garry observed respondent with Kayla twice before Kayla was taken into protective custody and stated that respondent was appropriate with Kayla. The court also admitted a certified statement of Cornell's conviction for the domestic battery of Kamesha into evidence.

On July 8, 2005, following the adjudicatory hearing, the court found that the State had proved by a preponderance of the evidence that all five children were abused and neglected due to an injurious environment and a substantial risk of physical injury. In addition, the court found that Kamesha had been physically abused, sexually abused, and subject to excessive corporal punishment. The court found that Cornell beat Kamesha on September 15, 2004. The court acknowledged the conflicting evidence as to whether respondent was present during this beating and found that if respondent did not know what happened that night, she did know the following morning when Kamesha complained of pain. The court held that respondent failed to take appropriate action at this time and instead, sent Kamesha to school. School officials, not respondent, notified DCFS and the police. The court found that respondent failed to protect Kamesha or seek medical attention for her injuries. The court also found evidence that Kamesha was

sexually abused by a family friend in respondent's home, that respondent was aware of this incident and that Kamesha reported that she was sexually assaulted more than once. The court found that respondent again failed to protect Kamesha from harm and failed to seek medical attention for her.

The court also found that Kawana, Corey and Cortez were living with respondent and Kamesha when the three indicated DCFS reports and these incidents occurred. The court found that between October 2004 and Kayla's birth in late December 2004, respondent cooperated with DCFS, participated in recommended assessments and services and visited with the children, but noted that this was a "very short period of time."

At the disposition hearing on September 16, 2005, Garry testified that Kawana, Cortez and Kayla were in the same foster home and were doing well. Her agency recommended that respondent participate in weekly individual therapy, a psychological evaluation, a vocational assessment, a budgeting program, a parental capacity assessment and continue weekly visitation with her children. Individual therapy addressed the trauma of having her children taken away, but also addressed respondent's history of physical and sexual abuse and domestic violence. Respondent was making progress in individual counseling, which she began in December 2004.

Respondent completed the psychological evaluation, which recommended that she receive ongoing support in order to care for her children and revealed that she was in need of life skills training or assistance. Respondent participated in the vocational assessment, but it had not yet been completed. She completed parenting classes in March 2005. Garry testified that the parenting classes respondent completed were sufficient to parent Kawana, Cortez and Kayla, but that she needed more parenting classes for Kamesha and Corey because of their special needs. Respondent was due to have a parenting capacity assessment to identify her specific needs to improve her parenting techniques on September 30, 2005. The parenting

6

assessment would determine if she had any cognitive delays, which would further assist Garry in identifying services. She stated that respondent needed someone to assist her daily in parenting all of her children. Her agency continued to explore possible services for respondent to address parenting skills. Garry testified that respondent had been diagnosed with mild mental retardation and had an IQ of 58.

Garry testified that her agency was not recommending unsupervised visits with any of the children because it was too early in the case. Respondent was allowed two hours per week supervised visits. Her agency wanted respondent to have more time in therapy to make more progress on her goals. There was an order of protection against Cornell ordering him to have no contact with Kamesha until August 2006. Garry recommended that Kawana, Cortez, and Kayla be made wards of the court so they could continue to receive services and because their parents were not ready for reunification.

Sherlicia Grizzard testified that she was Kamesha's and Corey's caseworker. Kamesha was mildly mentally retarded, had post-traumatic stress disorder and an emotional disturbance. Corey was nonverbal and had developmental and cognitive delays. She recommended that Kamesha and Corey be adjudged wards of the court because they required special needs services and the parents were not ready for reunification.

The court admitted several documents into evidence, including respondent's psychological report dated March 18, 2005. In that report, respondent stated that she wanted to be reunited with her family, including Cornell. On other occasions, however, respondent stated that she did not want to get back together with Cornell, suggesting that she felt conflicted. The report also indicated that Cornell's behavior was compatible with typical patterns of male abusers and that respondent had been referred to a therapist who specialized in working with victims of domestic violence.

The court then adjudged all five minors wards of the court, finding wardship to be in their best

interests. The disposition order for Kawana, Corey, Cortez and Kayla found respondent unable for some reason other than financial circumstances alone to care for, protect, train, or discipline these children. The order also found Cornell unable and unwilling to care for them. The disposition order for Kamesha entered on that date also adjudged her a ward of the court and found respondent unable for some reason other than financial circumstances alone to care for, protect, train, or discipline Kamesha. The permanency orders entered on that date for all five children listed the goal of return home within 12 months because respondent had made progress. The orders noted that respondent was participating in services, but that further services were necessary. The goal of return home could not be immediately achieved because further services and court dates were needed. Respondent then filed this timely appeal.

Respondent first argues that during Garry's testimony at the adjudicatory hearing, the court erred in sustaining an objection about respondent's care of Kayla after Kayla was taken into protective custody. Respondent contends that she was prejudiced when the court excluded this relevant evidence because she was prevented from establishing that no substantial risk of harm or an injurious environment was posed by her current care of Kayla.

We find this issue waived where respondent failed to make an offer of proof as to Garry's proposed testimony. To preserve an error in the exclusion of evidence, the proponent of the evidence must make an adequate offer of proof in the trial court. Sullivan-Coughlin v. Palos Country Club, Inc., 349 Ill. App. 3d 553, 561, 812 N.E.2d 496, 503-04 2004 . An adequate offer of proof apprises the circuit court of what the offered evidence is or what the expected testimony will be, by whom it will be presented and its purpose. Kim v. Mercedes-Benz, U.S.A., Inc., 353 Ill. App. 3d 444, 451, 818 N.E.2d 713, 719 2004 . The purpose of an offer of proof is to disclose to the circuit court and opposing counsel the nature of the offered evidence and to enable a reviewing

8

court to determine whether the exclusion of the evidence was proper. *Kim*, 353 Ill. App. 3d at 451, 818 N.E.2d at 719. Failure to make such an offer of proof results in waiver of the issue on appeal. *Sullivan-Coughlin*, 349 Ill. App. 3d at 561, 812 N.E.2d at 504.

Here, the record reflects that after the court sustained the objection to this line of questioning, respondent failed to ask to make any offer of proof as to Garry's proposed testimony. Rather, respondent's counsel abandoned that issue and continued questioning Garry on another subject. Therefore, respondent has waived this issue by failing to make an offer of proof, and we decline to address it.

Next, respondent challenges the trial court's adjudicatory finding as to Kayla only. She contends that the court's finding that Kayla was neglected due to an injurious environment and abused because of a substantial risk of physical injury was against the manifest weight of the evidence where Kayla was born after the abuse Kamesha suffered and the perpetrator of that abuse no longer resided in respondent's home.

A "neglected minor" includes any minor under 18 years of age whose environment is injurious to his or her welfare. 705 ILCS 405 2-3 1 b  West 2004   In re *Arthur H.*, 212 Ill. 2d 441, 462, 819 N.E.2d 734, 746  2004 . "Neglect" is defined as the failure to exercise the care that circumstances justly demand and encompasses both willful and unintentional disregard of parental duty. In re *K.T.*, 361 Ill. App. 3d 187, 200, 836 N.E.2d 769, 779  2005 . An injurious environment is an amorphous concept that cannot be defined with particularity, but has been interpreted to include the breach of a parent's duty to ensure a safe and nurturing shelter for his children. *Arthur H.*, 212 Ill. 2d at 463, 819 N.E.2d at 746-47. Further, a parent has a duty to keep his children free from harm. In re *A.R.*, 359 Ill. App. 3d 1071, 1074, 836 N.E.2d 375, 378  2005 . An abused minor includes any minor under 18 years old whose parent creates a substantial risk of physical injury to such minor by other than accidental means which would

be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function. 705 ILCS 405 2-3 2 ii West 2004 . Cases involving allegations of abuse, neglect and adjudication of wardship are *sui generis*, and must be decided on the basis of their unique facts. Arthur H., 212 Ill. 2d at 463, 819 N.E.2d at 747. The State has the burden of proving allegations of neglect and abuse by a preponderance of the evidence. In re T.S-P., 362 Ill. App. 3d 243, 248, 839 N.E.2d 137, 141 2005 . On review, a trial court's finding of neglect or abuse will not be reversed unless it is against the manifest weight of the evidence. Arthur H., 212 Ill. 2d at 464, 819 N.E.2d at 747.

Under the theory of anticipatory neglect, the State seeks to protect not only children who are the direct victims of neglect or abuse, but also those who have a probability to be subject to neglect or abuse because they reside, or in the future may reside, with an individual who has been found to have neglected or abused another child. Arthur H., 212 Ill. 2d at 468, 819 N.E.2d at 749. Although the neglect of one child does not conclusively show the neglect of another child, the neglect of one minor is admissible as evidence of the neglect of another minor under a parent's care. T.S-P., 362 Ill. App. 3d at 248-49, 839 N.E.2d at 142. Anticipatory neglect should take into account not only the circumstances surrounding the previously neglected sibling, but also the care and condition of the child named in the petition. T.S-P., 362 Ill. App. 3d at 249, 839 N.E.2d at 142. Under this theory, when faced with evidence of prior neglect by parents, the juvenile court should not be forced to refrain from acting until another child is injured. Arthur H., 212 Ill. 2d at 477, 819 N.E.2d at 754.

In this case, the record shows that Kayla's environment was injurious to her welfare and presented a substantial risk of injury. First, Cornell severely beat Kayla's half-sister, Kamesha, only three months

before Kayla's birth and later pled guilty to domestic battery for this incident. The testimony reflected that even though Cornell lived at a separate address at the time of Kayla's birth, he told the DCFS caseworker that he visited respondent and Kayla everyday after her birth before she was taken into protective custody a few weeks later. Respondent argues that she "personally supervised" these visits between Cornell and Kayla. However, this fact only supports the court's adjudicatory finding where there was evidence presented that respondent sat in the living room and ignored Kamesha's pleas for help while Cornell beat her. Additionally, there is no evidence that the family friend who had sexually abused Kamesha would not return to respondent's home.

Moreover, respondent herself neglected Kayla's half-sister and failed to protect her on numerous occasions. The court found that respondent knew that Cornell had beaten Kamesha and heard her complain of pain, but rather than contact the police or seek medical treatment for her child, respondent sent Kamesha to school and told her not to tell anyone what happened. There was also evidence that Cornell had beaten Kamesha before and that respondent had not sought help or prevented him from abusing her daughter. Further, respondent failed to protect Kamesha by allowing her to be repeatedly sexually abused by a family friend in her own house and by not seeking medical attention for Kamesha's sexually transmitted disease. Additional evidence presented showed that another of Kayla's siblings, Kawana, witnessed this sexual abuse in her house and needed therapy to address her experience. Additionally, respondent herself was indicated in a DCFS report when Corey was found alone in a park one mile away from respondent. Although respondent had cooperated with DCFS and had participated in several services, the court found that there was a very short period of time between the abuse suffered by

Kamesha in September 2004 and Kayla's birth that December.

Respondent's cited case of In re Edricka C., 276 Ill. App. 3d 18, 657 N.E.2d 78 (1995), is distinguishable. In Edricka C., the two minors were born four and five years, respectively, after the mother had abused a sibling. Further, both children had lived with their mother without any incident for several years before the State took them into protective custody based on an allegation later determined to be unfounded. Additionally, a DCFS child welfare specialist testified that she did not think these children were at any risk of harm. In the present case, however, the physical and sexual abuse suffered by Kayla's half-sister occurred only three months before her birth. Accordingly, Edricka C. is distinguishable.

Based on this evidence, there is a probability that Kayla would be subject to neglect or abuse because she would reside with respondent, who had been found to have neglected Kayla's sibling, and she may, in the future, reside with her natural father, Cornell, who had been convicted of beating her sister. Accordingly, the trial court's finding that Kayla was neglected due to an injurious environment and abused because of a substantial risk of physical injury was not against the manifest weight of the evidence.

Lastly, respondent challenges the court's dispositional finding as to Kawana, Cortez, and Kayla only. She argues that the trial court erred in finding that she was unable to care for these three children and in making them wards of the court because she had completed parenting classes sufficient to care for them.

Under section 2-271 of the Juvenile Court Act, the trial court may commit a minor to DCFS wardship if it determines that the parent is unfit or unable, for some reason other than financial circumstances alone, to care for, protect, train, or discipline the minor and that the health, safety, and best

1-02-3225

*interests of the minor will be jeopardized if the minor remains in the custody of the parent.* 705 ILCS 405/2-27(1) *West 2004. The purpose of a dispositional hearing is for the court to determine whether it was in the best interests of the children to be made wards of the court.* In re *Edward T., 343 Ill. App. 3d 778, 800, 799 N.E.2d 304, 321 2003.* The health, safety and interests of the minor remain the guiding principles when issuing an order of disposition regarding the custody and guardianship of a minor ward. In re Austin W., 214 Ill. 2d 31, 46, 823 N.E.2d 572, 582 (2005). The trial court's determination will be reversed only if the factual findings are against the manifest weight of the evidence or if the court abused its discretion by selecting an inappropriate dispositional order. In re April C., 326 Ill. App. 3d 245, 257, 760 N.E.2d 101, 110 (2001).

All of the evidence presented at the dispositional hearing supports the trial court's finding that respondent was unable to protect and care for Kawana, Cortez, and Kayla. Respondent was mildly mentally retarded with an IQ of 58. Garry testified respondent needed someone to assist her daily in parenting all of her children, not only her two children with special needs, Kamesha and Corey. DCFS continued to explore more possible services for respondent so she could address her parenting skills. The psychological evaluation she completed recommended that respondent receive ongoing support to care for her children and revealed that she needed life skills training or assistance. Most importantly, DCFS did not recommend that respondent have unsupervised visits with any of her children at the time of the hearing because it was too early in the case for such visits. Rather, respondent had only two hours per week of supervised visitation with all five of her children. DCFS wanted respondent to continue her individual therapy and

13

make more progress on her goals before such unsupervised visits would take place. Further, Garry recommended that Kawana, Cortez, and Kayla be made wards of the court so they could continue to receive services and because respondent was not ready for reunification.

Moreover, as discussed above, even though Cornell had moved out, *respondent stated in her psychological report that she wanted to be reunited with him*. An order of protection in effect at that time protected only Kamesha from Cornell and did not include the other four children.

Although respondent did participate in some recommended services, that fact does not mean that a disposition other than the one entered by the trial court would be in the best interests of the children. April C., 326 Ill. App. 3d at 258, 760 N.E.2d at 111. Additionally, respondent had not completed all of the services. Specifically, she had not completed her vocational assessment. Although Garry testified that the parenting classes respondent completed were sufficient to parent Kawana, Cortez and Kayla, she also testified that respondent had not yet completed a parenting capacity assessment to identify her specific needs to improve her parenting skills. That parenting assessment, scheduled to take place two weeks after the dispositional hearing, would determine if respondent had any cognitive delays that would necessitate more services. Further, she continued to make progress in therapy, but needed more counseling to address her history of physical and sexual abuse and domestic violence. Based on this evidence, we find that the trial court's order finding respondent unable to care for, protect, train or discipline Kawana, Cortez, and Kayla was not against the manifest weight of the evidence.

Accordingly, we affirm the judgment of the circuit court of Cook County.

14

1-02-3225

Affirmed.

HOFFMAN, P.J., and KARNEZIS, J., concur.

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**
_____

*In re* **KAMESHA J., KAWANA S., COREY S., CORTEZ S., and KAYLA S., Minors**

**(The People of the State of Illinois,**

    **Petitioner-Appellee,**

    **v.**

**Amy C.,**

    **Respondent-Appellant).**

_____

**No. 1-05-3225**

**Appellate Court of Illinois
First District, Third Division**

**Filed: March 22, 2006**

_____

**JUSTICE THEIS delivered the opinion of the court.**

**Hoffman, P.J., and Karnezis, J., concur.**

_____

**Appeal from the Circuit Court of Cook County
Honorable Robert Balanoff, Judge Presiding**

_____

**For APPELLANT,**        **Edwin Burnette, Public Defender of Cook County
Eileen T. Pahl, Assistant Public Defender
69 W. Washington St., 15th Floor
Chicago, IL 60602**

**For APPELLEE,**        **Richard A. Devine, State's Attorney**
**the People,**        **James E. Fitzgerald, Assistant State's Attorney**

Nancy Kisicki, Assistant State's Attorney
Nancy Faulls, Assistant State's Attorney
Darryl Jones, Assistant State's Attorney
300 Richard J. Daley Center
Chicago, IL 60602

For APPELLEE,
the Minor,

Office of the Public Guardian of Cook County
Robert F. Harris
Kass A. Plain
Gean M. Agathen
2245 W. Ogden Ave., 4th Floor
Chicago, IL 60612