SIXTH DIVISION

MARCH 28, 2003

1-01-3584

MICHAEL CHALHOUB, Administrator of the ) Appeal from the

Estate of CHRISTOPHER CHALHOUB, deceased, ) Circuit Court

) of Cook County

Plaintiff-Appellant,
 ) 

) 

) No. 00 L 5166

) 

WILLIAM DIXON, 
 ) The Honorable

) Kathy M. Flanagan

Defendant-Appellee. 
 ) Judge Presiding.

JUSTICE TULLY delivered the opinion of the court:

The plaintiff, Michael Chalhoub (Chalhoub), is the administrator of the estate of his brother, Christopher Chalhoub, who committed suicide in 1998 at the age of thirty-two.  
Chalhoub alleges that the defendant's negligence in the handling and storage of a firearm proximately caused Christopher Chalhoub to commit suicide.  Chalhoub filed a complaint on behalf of the estate, against William Dixon, the stepfather of both Michael and Christopher Chalhoub.  The trial court granted summary judgment in favor of the defendant, finding that the defendant owed no duty to prevent Christopher's suicide.  The estate appeals that finding.

On May 1, 1998, Christopher Chalhoub was treated at Northwest Community Hospital after his mother, Nadia, had gone to his apartment and found him depressed and crying.  Nadia called the defendant and informed him that Christopher had threatened suicide.  The defendant stated in his deposition that when he arrived at the hospital, he was told that Christopher could not be admitted to the mental unit for insurance reasons so he was being transferred to Forest 

1-01-3584

Hospital.  The following day, May 2, 1998, Christopher was discharged from Forest Hospital.  Chalhoub alleges that following Christopher's release, he was primarily staying at the home of the defendant who is the stepfather of Michael and Christopher.  Chalhoub alleges that on May 7, 1998, Christopher removed the defendant's handgun from the premises and used the gun to kill himself.  Chalhoub alleges the defendant was negligent in that he failed to remove the handgun from the premises; to secure the handgun; to render the handgun inoperable; to ensure that Christopher did not have access to the handgun; and to observe that Christopher had taken the handgun.

The defendant testified in his deposition that he had been employed as a police officer for the Sheriff of Cook County until 1991.  After the defendant's employment with the Sheriff's Office ended, Mr. Dixon wrapped his handgun in a white t-shirt and placed it on a shelf in the closet in the master bedroom, behind some shoes.  Mr. Dixon kept the bullets to the gun in a box marked "bullets," in an unlocked drawer in his nightstand.  Mr. Dixon stated that he owned the gun between May 1 and 7, 1998, but he was not exactly sure of its whereabouts on May 1st.  Mr. Dixon testified that the last time he had seen the gun was shortly after he left the Sheriff's Office in 1991.

Mr. Dixon further testified that he first observed Christopher was depressed after Christopher lost his job sometime prior to May 1, 1998.  He stated that he and his wife discussed Christopher's depression and that he thought Christopher was seeing a counselor prior to the Spring of 1998.

1-01-3584

Mr. Dixon testified that after Christopher was transferred to Forest Hospital, he overheard someone telling his wife that Christopher would be in the Hospital for five days and that if Christopher was not then released by a doctor, he would be moved to a state mental hospital.  However, Christopher was released from Forest Hospital the following day.  Mr. Dixon stated that he was comfortable with Christopher's discharge because he assumed the professionals at the hospitals knew what they were doing.  Mr. Dixon and his wife only spoke to the receptionist at Forest Hospital on the day Christopher was discharged.  Mr. Dixon and his wife drove Christopher to their house.

Mr. Dixon testified that over the next few days and nights, Christopher may have stayed at either Mr. Dixon's home or at his own apartment.  During that time, both Mr. Dixon and Nadia were working.  Mr. Dixon worked both a day job and a night job.  Mr. Dixon was not aware that Christopher had returned to his own apartment on May 7, 1998.  After hearing about Christopher's death from Michael Chalhoub, he suspected that Christopher had used one of his guns in his suicide.  Mr. Dixon told the police that he had a gun fitting the description of that used by Christopher.  When Mr. Dixon returned home from the police station, he looked for the gun and instead found two hammers wrapped in the t-shirt in the closet where he had left the gun in 1991.

We begin our discussion by noting that summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a 

1-01-3584

matter of law." 735 ILCS 5/2-1005(c) (West 2000);  
Petrovich v. Share Health Plan of Illinois, Inc.
, 188 Ill.2d 17, 30-31, 719 N.E.2d 756 (1999). The purpose of summary judgment is not to try a question of fact, but to determine if one exists. 
Robidoux v. Oliphant
, 201 Ill.2d 324, 775 N.E.2d 987 (2002).  The function of a reviewing court on appeal from a grant of summary judgment is limited to determining whether the trial court correctly concluded that no genuine issue of material fact was raised and, if none was raised, whether judgment as a matter of law was correctly entered. 
Malanowski v. Jabamoni
, 293 Ill.App.3d 720, 724, 688 N.E.2d 732, 735 (1997). Our review of an order granting summary judgment is 
de novo
. 
Morris v. Margulis
, 197 Ill.2d 28, 35, 754 N.E.2d 314 (2001).

The estate argues on appeal that the trial court erred in ruling that the defendant did not have a duty to prevent Christopher Chalhoub from committing suicide.  The estate contends that its claim is not that the defendant failed to prevent the suicide, rather the estate claims that the defendant negligently stored and secured his handgun.  The estate argues that the defendant owed Christopher Chalhoub a duty to safely store and secure the handgun and to prevent Christopher from gaining access to it.  The estate further asserts that Christopher's suicide was foreseeable and thus did not constitute an independent intervening act.  We disagree.

Regardless of how the plaintiff attempts to frame the argument, the claim is essentially that Dixon was negligent in storing and securing his handgun and this negligence led to Christopher's suicide.  In order to sustain such a claim, the plaintiff must establish that Dixon owed Christopher a duty to safely store and secure the handgun.  Moreover, the plaintiff must establish that Dixon's 

1-01-3584

alleged negligence was the proximate cause of Christopher's suicide.  Christopher's estate fails to establish that Dixon breached a duty to Christopher, or that Dixon's alleged negligence proximately caused Christopher's suicide.

Essentially, the estate seeks to impose on Dixon a duty to foresee and avoid Christopher's suicide. Although this court imposed such a duty on a psychiatrist who knew of his patient's history of suicidal depression and yet failed to protect the patient from self-harm, 
see
 
Winger v. Franciscan Med. Ctr.
, 299 Ill.App.3d 364, 371-72, 375, 701 N.E.2d 813 (1998), the estate here points to no case law extending such a duty outside of the doctor-patient context. Because of the differences between the psychiatrist-patient relationship and the relationship here, we see no justification for extending such a duty to lay persons. Psychiatrists are health care professionals trained to care for their patients' mental and emotional health. By contrast, laypeople cannot be reasonably expected to anticipate the mental health consequences of their acts or omissions.  Whether Dixon had a duty to prevent Christopher's suicide depends on the suicide's foreseeability, its likelihood, the magnitude of the burden of guarding against it, and the potential consequences of placing that burden on Dixon. 
See
 
Collins
, 154 Ill.2d at 51, 607 N.E.2d 1185.  Christopher's estate urges that Dixon should have foreseen that Christopher would use the gun to commit suicide because he knew that Christopher was suffering from severe depression and because he knew Christopher had threatened to commit suicide. As we just noted, however, because Dixon was not a medical professional, he could not have reasonably been expected to foresee that his failure to secure his handgun would lead to Christopher using it to commit suicide.

1-01-3584

Moreover, the magnitude of placing such a burden on Dixon to foresee and prevent a suicide is very great. Dixon cannot reasonably be expected to secure his home so as to prevent a suicide.  Imposing such a burden would create an unreasonable risk of liability as the scope of such a burden would be ever expanding. Would such a burden include securing all knives, razors, aspirin, and other potentially harmful items in the home?  What relationship is required to impose such a duty?  Here, Christopher used a handgun, however, he could have just as easily used a kitchen knife or overdosed on aspirin.  Further, Christopher was an adult who no longer resided in the Dixon home.  For these reasons, we find that the estate fails to establish that Dixon had a duty to foresee and avoid Christopher's suicide.

Further, even assuming that Dixon had such a duty, the estate fails to show that Dixon's alleged negligence proximately caused Christopher's suicide. A proximate cause is one that produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause. 
See
 
Kleen v. Homak Mfg. Co.
, 321 Ill.App.3d 639, 641, 749 N.E.2d 26 (2001). 

It is well-established under Illinois law that a plaintiff may not recover for a decedent's suicide following a tortious act because suicide is an independent intervening event that the tortfeasor cannot be expected to foresee. See 
Kleen
, 321 Ill.App.3d at 640, 749 N.E.2d 26; 
Moss by Moss v. Meyer
, 117 Ill.App.3d 862, 864, 454 N.E.2d 48 (1983); 
Little v. Chicago Hoist & Body Co.
, 32 Ill.2d 156, 158-59, 203 N.E.2d 902 (1965); 
Stasiof v. Chicago Hoist & Body Co.
, 50 Ill.App.2d 115, 122, 200 N.E.2d 88 (1964).

1-01-3584

We agree with the trial court that Christopher's suicide was an independent intervening event that broke the chain of causation from Mr. Dixon's alleged malpractice to Christopher's death. Christopher was an adult, and the estate has not alleged that he was mentally unstable. See 
Kleen
, 321 Ill.App.3d at 643, 749 N.E.2d 26.  Moreover, Christopher removed the gun from the closet and replaced it with hammers in order to hide the fact that the gun was missing.  Therefore, we assume that Christopher was a competent adult who clearly understood what he was doing and intentionally took his own life.

For the foregoing reasons, we affirm the decision of the trial court.

AFFIRMED. 

O'BRIEN, P.J., and GALLAGHER, J., concur.