**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 230714-U

Order filed February 3, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| CATHERINE ZELEK, as Special Administrator for the Estate of JUSTIN EZERSKI, | ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | Appeal No. 3-23-0714 Circuit No. 22-LA-800 |
| v. | ) ) | |
| CHRISTINE MANIKOWSKI, | ) ) | Honorable Roger Rickmon, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Davenport and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The trial court did not err in granting defendant's motion to dismiss plaintiff's amended complaint.

¶ 2    Plaintiff, Catherine Zelek, as special administrator for the estate of Justin Ezerski, appeals the trial court's dismissal of her amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2022)). In the amended complaint, plaintiff alleged that defendant, Christine Manikowski, negligently caused the wrongful death of Justin, defendant's

son, when he accessed defendant's unsecured firearm and committed suicide. For the reasons set forth below, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        This case involves the tragic circumstances surrounding the untimely death of 17-year-old Justin by suicide. The following facts are derived from the operative amended complaint.

¶ 5        Justin is the son of defendant and Jeff Ezerski. Justin suffered from depression and attended therapy, although he stopped attending at some point prior to his death. Justin's sexual orientation caused a strain in his relationship with defendant. Leading up to his death, Justin posted on social media that he was engaging in self-harm ("cutting"). He also occasionally consumed hard liquor that defendant kept at her residence while he was home alone.

¶ 6        Defendant was an employee of the Will County Sheriff's Department and kept firearms in her residence. Noting Justin's "recent quiet nature and withdrawal," Jeff relayed to defendant his concern for Justin's mental health and safety. Jeff requested that defendant secure her firearms and store her ammunition in a separate location, and defendant agreed to do so. Nonetheless, on October 26, 2022, Justin obtained a loaded firearm from defendant's unlocked nightstand and committed suicide.

¶ 7        On June 26, 2023, plaintiff filed the operative amended complaint pursuant to the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 2022)), alleging that defendant negligently caused Justin's death by breaching her duty of care by allowing and keeping an unsecured, loaded firearm in her residence with her minor son who openly struggled with his mental health. Defendant filed a section 2-615 motion to dismiss, arguing that the amended complaint was legally deficient in that plaintiff failed to establish the elements of duty and causation necessary to sustain a cause of action for negligence. After conducting a hearing, and without reaching the issue of causation, the

trial court granted defendant's motion with prejudice, reasoning that the duty plaintiff sought to impose on parents "would be almost impossible to meet" and that plaintiff failed to show Justin's actions were foreseeable. This appeal followed.

¶ 8                                   II. ANALYSIS

¶ 9        On appeal, plaintiff argues that defendant's motion to dismiss was erroneously granted, as defendant owed a duty of care to Justin, and the foreseeability of Justin's actions was properly alleged in the amended complaint. Plaintiff further argues that the issue of causation was a question of fact that should have been presented to a jury. For the reasons that follow, we affirm.

¶ 10       A section 2-615 motion to dismiss challenges a complaint as being legally deficient on its face. *M.U. v. Team Illinois Hockey Club, Inc.*, 2022 IL App (2d) 210568, ¶ 16. In examining the motion, "the court must accept as true all well-pleaded facts and any reasonable inferences drawn from those facts" and "construe the well-pleaded facts in a light most favorable to the plaintiff." *Id.* However, unsupported legal and factual conclusions will not be accepted as true. *Id.* The motion should only be granted "when it is apparent that no set of facts could be proved that would entitle the plaintiff to relief." *Id.* We review an order granting a section 2-615 motion to dismiss *de novo*. *Id.* We may affirm on any grounds supported by the record. *Akemann v. Quinn*, 2014 IL App (4th) 130867, ¶ 21.

¶ 11       To survive a section 2-615 motion to dismiss, a complaint alleging negligence must plead facts which, if true, satisfy the following elements: (1) a duty was owed by defendant; (2) defendant breached said duty; (3) an injury was proximately caused by the breach of duty; and (4) damages. *Doe v. Doe*, 2016 IL App (1st) 153272, ¶ 6. We address the issues of duty and proximate cause in turn.

3

¶ 12    Whether an individual is subject to a duty to prevent another's suicide turns on four factors: "the suicide's foreseeability, its likelihood, the magnitude of the burden of guarding against it, and the potential consequences of placing that burden on [defendant]." *Chalhoub v. Dixon*, 338 Ill. App. 3d 535, 539 (2003). Duty is decided as a matter of law. *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 34. *Chalhoub* is instructive on this issue.

¶ 13    In *Chalhoub*, an adult son was treated at a hospital for depression after he threatened suicide. *Chalhoub*, 338 Ill. App. at 536-37. The son's mother alerted his stepfather to these events, and the son occasionally stayed at the stepfather's residence after his discharge from the hospital. *Id.* at 537. The stepfather had a firearm at his residence and kept it wrapped in a t-shirt on a shelf of his bedroom closet behind shoes. *Id.* He stored his ammunition in a marked box in his nightstand's unlocked drawer. *Id.* The son accessed the firearm and committed suicide. *Id.* The son's estate sued the stepfather, alleging that he negligently stored and secured his firearm. *Id.* at 536, 538. The stepfather filed a motion for summary judgment, which was granted after the trial court found that he owed no duty to the son to prevent his suicide. *Id.* at 536.

¶ 14    The estate appealed, arguing that the claim was not that the stepfather failed to prevent the suicide but that he negligently stored and secured his firearm. *Id.* at 538. The stepfather's duty, as urged by the estate, was to safely store his firearm and prevent the son from accessing it. *Id.* The court, nonetheless, explained that the duty sought to be imposed on the stepfather was essentially a duty to foresee and avoid the son's suicide. *Id.* at 539.

¶ 15    In analyzing the foreseeability factor, the court acknowledged that a trained psychiatrist who knew of a patient's suicidal depression had a duty to protect the patient from self-harm but refused to extend this duty to a layperson, reasoning that a non-medical professional "cannot be reasonably expected to anticipate the mental health consequences of their acts or omissions." *Id.*

4

The court also recognized that the magnitude of placing this burden on the stepfather would be "very great." *Id.*

> "[Stepfather] cannot reasonably be expected to secure his home so as to prevent a suicide. Imposing such a burden would create an unreasonable risk of liability as the scope of such a burden would be ever expanding. Would such a burden include securing all knives, razors, aspirin, and other potentially harmful items in the home? What relationship is required to impose such a duty? Here, [the son] used a handgun, however, he could have just as easily used a kitchen knife or overdosed on aspirin. Further, [the son] was an adult who no longer resided in the [stepfather's] home. For these reasons, we find that the estate fails to establish that [stepfather] had a duty to foresee and avoid [the son's] suicide." *Id.*

¶ 16 While we accept the well-pled facts alleged in the amended complaint here, *Chalhoub* explains how defendant, as a layperson, could not have "reasonably foreseen" that Justin would use her firearm to take his own life. Neither defendant's status as Justin's mother, nor Jeff's warning that he believed Justin to be at risk, alters the fact that defendant lacked the necessary tools to anticipate this tragedy. Indeed, the facts alleged to support foreseeability here are even less compelling than those in *Chalhoub*: Justin had not been hospitalized for his mental health, nor was there any suggestion of suicidal ideation. As in *Chalhoub,* under these circumstances, placing on defendant the burden to guard against Justin's suicide would result in an insurmountable duty and "an unreasonable risk of liability." *Id.* While Justin ultimately utilized a firearm, he could have selected any number of alternative methods to end his life, including the use of seemingly benign household items. Defendant cannot be "reasonably expected to secure [her] home so as to prevent a suicide." *Id.* Accordingly, defendant did not owe Justin a duty to prevent his suicide, and plaintiff failed to plead facts which would sustain a claim for negligence.

5

¶ 17    To evade the holding in *Chalhoub*, plaintiff first notes that *Chalhoub* was decided on a motion for summary judgment and not a motion to dismiss. We find the differing procedural postures inconsequential notwithstanding that *Chalhoub*'s facts were more developed through discovery leading up to the summary judgment proceeding. Accepting each of plaintiff's well-pled allegations as true for purposes of resolving defendant's section 2-615 motion to dismiss, the allegations set forth in the amended complaint do not sustain a claim for negligence as a matter of law.

¶ 18    Second, plaintiff conflates *Chalhoub*'s duty and proximate cause analyses, arguing that the court's recognition that the son was an adult, that the estate did not allege that the son was mentally unstable, and that the son replaced the stepfather's firearm with hammers, informed its conclusion that the stepfather did not owe the son a duty to prevent his suicide. *Chalhoub*, 338 Ill. App. at 540. However, these factors were primarily discussed in the context of proximate cause to illustrate that the son understood what he was doing when he voluntarily committed suicide, thereby breaking the chain of causation. *Id.* In discussing the duty question, the court focused at length on the great magnitude of placing upon an individual the burden to secure one's home to prevent suicide and the ever-expanding implications of such a rule. In determining that the stepfather, who was a layperson, did not have the legal duty to prevent the son's suicide, the court did observe the son's age and that he did not live with the stepfather. *Id.* at 539. However, the court did not otherwise suggest that the son's age and place of residence might have been significant in concluding that the stepfather did not owe the son a duty. See *id.* We do not consider such factors determinative of the duty question as they did not impart on defendant any additional knowledge that would render Justin's suicide foreseeable or lessen the burden that would arise if, under these circumstances, defendant were required to prevent his death.

6

¶ 19    As an exception to the duty analysis in *Chalhoub,* plaintiff argues that defendant's duty arises through the parent-minor child relationship she shared with Justin, claiming it falls within the definition of a "special relationship" that gives rise to a duty. In support, she cites section 316 of the Restatement (Second) of Torts (1965) (outlining the circumstances under which a parent has a "special relationship" with a minor child so as to create a duty to "exercise reasonable care so to control [the] minor child" in order to prevent harm to a third party). This duty theory, however, is inapplicable to the issue before us because it concerns a parent's liability when a child injures a third party, and not when a child is injured as a result of the parent's conduct.

¶ 20    In a similar vein, plaintiff directs us to authority discussing the general rule that parents, and not third parties, are primarily responsible for a child's safety. See *Mount Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110 (1995) (whether a telephone company was liable where a minor used its utility pedestal to climb a fence and gain access to a neighboring swimming pool); *Driscoll v. C. Rasmussen Corp.*, 35 Ill. 2d 74 (1966) (whether a contractor was liable where a minor was injured while playing with trash left at a construction site). While parents certainly have a duty to keep their children safe and free from harm, *In re A.R.*, 359 Ill. App. 3d 1071, 1074 (2005), the duty necessary to establish negligence in cases arising from an individual's suicide is the duty to prevent the suicide. See *Turcios v. DeBruler Co.*, 2015 IL 117962 (2015) (noting that the suicide rule applies so long as the defendant did not have a duty to prevent the suicide); *Chalhoub*, 338 Ill. App. 3d at 538-39 (framing the issue as whether defendant had a duty to foresee and avoid decedent's suicide, despite plaintiff's contention that the defendant's duty was to safely store and secure his firearm and prevent the decedent's access to it). As such, notwithstanding plaintiff's characterization of defendant's negligence as the failure to safely

7

secure and store her firearm, plaintiff was required to plead facts which, if true, would establish that defendant had a duty to prevent Justin's suicide. *Id.*

¶ 21 Moreover, even assuming for the sake of analysis that defendant did owe Justin a duty, the facts set forth in the complaint otherwise fail to establish that defendant's actions proximately caused Justin's death. "A proximate cause is one that produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause." *Id.* Proximate cause requires a showing of both cause in fact and legal cause. *Turcios*, 2015 IL 117962, ¶ 23. Here, we are concerned with the latter. Legal cause is intertwined with foreseeability in that a defendant is not liable for a "highly extraordinary" injury to another if the injury would not have been anticipated by a reasonable person as a "likely result" of the conduct at issue. *Id.* ¶ 24. "While proximate cause is ordinarily a question for the trier of fact, it becomes a question of law where there is no material issue of fact regarding the matter or only one conclusion is clearly evident." *Kleen v. Homak Manufacturing Company, Inc.*, 321 Ill. App. 3d 639, 641 (2001).

¶ 22 As a general rule, the "voluntary act of suicide is an independent intervening act which is unforeseeable as a matter of law, and which breaks the chain of causation from the tortfeasor's negligent conduct[,]" provided that the defendant did not have a duty to prevent the suicide (suicide rule). *Turcios*, 2015 IL 117962, ¶ 20. Given the "complex combination" of factors which may lead to suicide, it is "the rare case" that the suicide rule would not foreclose liability. *Id.* ¶ 41. Illinois courts have recognized only two exceptions thus far. *Doe*, 2016 IL App (1st) 153272, ¶ 16. The first is when, "as the proximate result of an injury upon [the decedent's] head caused by the negligence of another[,] [the decedent] becomes insane and bereft of reason" and commits suicide while in that state. *Stasiof v. Chicago Hoist & Body Co.*, 50 Ill. App. 2d 115, 122 (1964). The second is when a mental healthcare professional assumes custody or control of an individual

8

known to have suicidal tendencies and fails to act reasonably to prevent the individual's self-inflicted harm. *Winger v. Franciscan Medical Center*, 299 Ill. App. 3d 364, 374-75 (1998).

¶ 23    Advocating for a further extension of the exception to the suicide rule, plaintiff attempts to liken the facts before us to those set forth in *Hankins v. Alpha Kappa Alpha Sorority, Inc.*, 447 F. Supp. 3d 672 (N.D. Ill. 2020), a federal case applying Illinois law. In *Hankins*, sorority members severely hazed decedent, including "paddling, verbal abuse, mental abuse, financial exploitation, sleep deprivation, items being thrown and dumped on her, and other forms of hazing intended to humiliate and demean her." *Id.* at 678. Prior to her death, decedent informed the sorority members that their actions were triggering her PTSD, causing severe anxiety and depression, and that she was having suicidal thoughts. *Id.* at 678-79. She also told them that she had a plan to end her life. *Id.* at 682. Noting that the suicide rule and its exceptions are not absolute, the court found the allegations sufficient to plead foreseeability based upon the "specific link" between the hazing conduct and the suicide. *Id.* at 681-83. The court noted the specificity of decedent's disclosure of her plan to commit suicide and distinguished it from a disclosure "that she was generally depressed or suicidal" and noted that Illinois courts have not foreclosed "liability based on allegations that a victim explicitly told defendants that (1) their misconduct was triggering symptoms of the victim's mental health issues; and (2) the victim had a plan to commit suicide." *Id.*

¶ 24    The facts of *Hankins* are entirely distinguishable from the facts pled in plaintiff's amended complaint: there is no allegation that defendant engaged in any intentional verbal or physical abuse; Justin never told defendant that her conduct was triggering his depression, and certainly not that she was triggering suicidal thoughts; and Justin is not alleged to have disclosed to defendant, his father, or any mental health professional an intention to commit suicide. None of the facts alleged suggest that Justin's suicide was anything other than a tragic, unforeseeable voluntary act.

9

In other words, defendant's conduct does not amount to the "specific link" contemplated in *Hankins*, and we are unpersuaded by plaintiff's arguments to the contrary.

¶ 25 In sum, the facts set forth in plaintiff's amended complaint do not fall within the two recognized exceptions to the suicide rule, nor do they warrant a "rare" extension of the current body of law. *Cf. Doe*, 2016 IL App (1st) 153272, ¶¶ 3, 17 (holding that allegations that defendant caused decedent severe emotional distress, knew decedent was suicidal, and encouraged decedent to commit suicide would not overcome application of the suicide rule). Therefore, as a matter of law, no reasonable juror could conclude that defendant had a duty to prevent Justin's suicide or that her actions were the proximate cause of Justin's death, and defendant's section 2-615 motion to dismiss was properly granted. *Kleen*, 321 Ill. App. 3d at 642 (addressing proximate cause as a matter of law because the complaint failed to plead facts that, even if true, would establish proximate cause).

¶ 26 III. CONCLUSION

¶ 27 For the reasons stated herein, we affirm the judgment of the circuit court of Will County.

¶ 28 Affirmed.