2025 IL App (1st) 240267-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DIVISION
February 24, 2025

No. 1-24-0267

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

---

| | | |
|---|---|---|
| NEFER ROZO, Independent Administrator of the Estate of Rona Rozo, Deceased, | ) ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | Appeal from the |
| PEARLSHIRE COUNTRYSIDE HOTEL LLC, d/b/a | ) | Circuit Court of |
| Holiday Inn Countryside; MARITZA ARREZ, ANA | ) | Cook County |
| ACOSIO and ROSA GOMEZ, each Individually and as | ) | |
| agents for RINCON FAMILY SERVICES, and RINCON | ) | No. 23 L 64001 |
| FAMILY SERVICES; Dr. GREG GENDEL, Individually | ) | |
| and as agent for ADVENT HEALTH d/b/a AdventHealth | ) | The Honorable |
| LaGrange, and ADVENT HEALTH; Dr. AFTAB KHAN, | ) | Kevin T. Lee, |
| Individually and as agent for JACKSON PARK | ) | Judge Presiding. |
| HOSPITAL FOUNDATION d/b/a Jackson Park Hospital | ) | |
| and Medical Center, and JACKSON PARK HOSPITAL | ) | |
| FOUNDATION; Dr. JORGE FERRER, Individually and | ) | |
| as agent for MOUNT SINAI HOSPITAL MEDICAL | ) | |
| CENTER OF CHICAGO; and THE CITY OF | ) | |
| CHICAGO, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Pearlshire Countryside Hotel LLC, Defendant-Appellee). | ) | |

---

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Pucinski and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:* The appellate court affirms the trial court's dismissal of negligence claims against a hotel for failing to prevent the plaintiff's decedent from accessing a rope by which she hanged herself. The hotel had no duty to foresee that the defendant was suicidal or to prevent her suicide from occurring.

¶ 2    Defendant Pearlshire Countryside Hotel LLC, d/b/a Holiday Inn Countryside, operates a hotel at which groups of recent immigrant families from Venezuela were placed for temporary lodging. The present case arises from a tragic occurrence in which one of those immigrants, Rona Roza, committed suicide by hanging herself with a rope connected to a roof hatch in a stairwell of the defendant's hotel. Plaintiff Nefer Rozo, who is Rona's sister and the independent administrator of her estate, filed wrongful death and survival claims against the defendant for its alleged negligence in failing to prevent Rona from accessing the rope by which she hanged herself. The trial court dismissed the claims against the defendant after concluding that it did not owe a duty of care to foresee and prevent Rona's suicide. The plaintiff appeals the dismissal of these claims. We affirm the judgment of the trial court.[1]

¶ 3                                    BACKGROUND

¶ 4    The plaintiff, her sister Rona, and various other members of their families immigrated to the United States from Venezuela. They eventually arrived in the Chicago area, where an immigrant assistance agency placed them for housing at the defendant's hotel beginning September 4, 2022.

---

[1] The record on appeal in this case indicates that, as of April 8, 2024, the claims in the plaintiffs' second amended complaint remained pending against all other named defendants. On February 27, 2024, the trial court denied without prejudice a motion to dismiss filed by defendants Rincon Family Services, Maritza Arrez, Ana Acosio, and Rosa Gomez. Also, the trial court had entered and continued motions to dismiss filed by defendants Adventist LaGrange Memorial Hospital, Jackson Park Hospital Foundation, Aftab Khan, M.D., and Mount Sinai Hospital Medical Center on the basis that the plaintiff had failed to submit an affidavit and healthcare professional's report as required by section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 2022)). The record on appeal indicates that the plaintiff filed a physician's report and certificate of medical malpractice on March 25, 2024, but the record reflects no further rulings on the defendants' pending motions to dismiss. Two physician defendants had not yet answered or otherwise pled in response to the second amended complaint.

¶ 5       The operative second amended complaint alleges that, in the month prior to her death, Rona experienced three mental health crises that were witnessed by the defendant's employees or staff. The first occurred approximately four weeks before she died, when she came to the lobby of the defendant's hotel crying and in hysterics. There she told several employees of the immigrant assistance agency that someone was trying to take her daughter from her. The agency's employees called the plaintiff, who came to the lobby and helped return Rona to her room.

¶ 6       The second incident occurred approximately two weeks later, when Rona again came to the lobby of the defendant's hotel in a state of hysterics. There she "obtained the attention of everyone present" and insisted that her niece (*i.e.*, the plaintiff's daughter) needed emergency medical attention, even though the niece had only a minor fever and was otherwise healthy. Rona was speaking incoherently and appeared not to be thinking clearly. Rona called 911 from the lobby. Emergency personnel arrived there and told her that her niece did not need medical treatment. This incident led to Rona being admitted for two days to La Grange Hospital and two additional days to Jackson Park Hospital for major depressive disorder. She was discharged without receiving prescription medication and returned to the hotel in a state of agitation, anxiousness, and depression.

¶ 7       The third incident occurred two days before her death. In the presence of the defendant's security staff, Rona said that she "had to go 'look for God.' " She then stood in front of a truck belonging to another hotel guest and would not allow it to pass. After this occurred, Rona was transported by ambulance to LaGrange Hospital and subsequently discharged without prescription medication. The next day the plaintiff took Rona to Sinai Chicago Hospital, where she was told that she might have schizophrenia but was again discharged without medication.

¶ 8       The following afternoon, which was December 2, 2022, Rona took her own life by hanging

herself. The instrumentality by which she did so was a rope that had been affixed to the handle of a roof hatch accessible in the seventh floor of a stairwell of the defendant's hotel. A wall-mounted ladder was adjacent to the roof hatch. While the second amended complaint does not include allegations as to the rope's dimensions, a photograph incorporated into it shows it to be a relatively short length of rope that was likely used to pull the roof hatch closed from inside.

¶ 9     The plaintiff's second amended complaint contains general allegations to the effect that the defendant knew or should have known that the immigrant population that it served was vulnerable due to the trauma they received in their native countries and their travels to the United States. More specifically as to Rona, it alleges that the defendant was on notice of Rona's mental health instability due to witnessing her breakdowns and her erratic and agitated behavior on the premises of the defendant's hotel that led to her hospitalization on multiple occasions. It alleged that despite this knowledge, the defendant allowed the existence of a dangerous condition on its premises, that being the unattended rope hanging from the roof hatch in the stairwell and accessible to all hotel guests. It specifically alleged that an "innkeeper-guest relationship" existed between the defendant and Rona, whereby the defendant should be held to a duty to take reasonable precautions to protect Rona from risks which it could reasonably anticipate, including injury from the hanging rope.

¶ 10     The trial court granted a motion to dismiss the counts against the defendant with prejudice. Its basis for doing so was the principle of Illinois law that, provided a defendant in a negligence action is under no duty to prevent the suicide, an injured party's act of suicide is deemed an independent intervening act that is unforeseeable as a matter of law and breaks the chain of causation from a tortfeasor's negligent conduct. See *Turcios v. DeBruler Co.*, 2015 IL 117962, ¶ 20. The trial court noted that, while a duty to prevent suicide can be imposed in certain doctor-patient contexts involving mental health care, laypersons are not regarded as owing such a duty.

See *Chalhoub v. Dixon*, 338 Ill. App. 3d 535, 539 (2003). The trial court found nothing that made Rona's suicide reasonably foreseeable to the defendant based on a handful of incidents, and it noted that a high burden would be placed on the defendant to guard against anything on its premises becoming an instrument of self-harm at the hands of a hotel guest. The trial court summarized its reasoning as follows:

> "At most, hotel staff might be said to have been aware that [Rona] was in great distress; it is unclear how hotel staff—lacking the expertise and professional responsibilities of, say, a mental health professional, a clinical social worker, or a custodial jailer and having committed no intentionally tortious actions—were supposed to be able to foresee [Rona's] suicidal intentions and take active steps to safeguard against any possible contrivance in pursuit of that disastrous intent."

¶ 11    The trial court thereafter made a finding that there was no just reason for delaying the appeal of its order granting the defendant's motion to dismiss with prejudice. This appeal followed.

¶ 12                                                    ANALYSIS

¶ 13    The plaintiff's challenge in this appeal is to the trial court's granting of a motion to dismiss under section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2022). A motion to dismiss under section 2-615 challenges the legal sufficiency of a complaint based upon defects apparent on the complaint's face. *Lintzeris v. City of Chicago*, 2023 IL 127547, ¶ 18. The standard for evaluation of such a motion is whether the allegations of the complaint, when taken as true and viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief could be granted. *Id.* We undertake *de novo* review of the trial court's granting of a motion to dismiss under section 2-615. *Id.*

¶ 14    On appeal, the plaintiff's primary argument is that the trial court erred in its conclusion that

the defendant owed no duty of care to prevent Rona's death by hanging herself from the rope affixed to the roof hatch in the stairwell of its hotel. The plaintiff argues that a special relationship of innkeeper-guest existed between the defendant and Rona, which gave rise to a heightened duty of care on the part of the defendant to foresee and guard against the risk that Rona would commit suicide while a guest of the hotel.

¶ 15    To state a cause of action for negligence, a complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 15. The issue of whether a defendant owed a duty of care to a plaintiff is a question of law to be determined by the court. *Quiroz v. Chicago Transit Authority*, 2022 IL 127603, ¶ 13. The focus of the court's duty inquiry is whether the plaintiff and the defendant stood in such a relationship to one another that the law imposes upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 22. It is also an inquiry shaped by public policy. *Id.* Four factors guide the court's analysis of whether a duty exists: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. *Quiroz*, 2022 IL 127603, ¶ 13.

¶ 16    In the context of a wrongful death case involving suicide, a court's analysis of duty also may be informed by the principle that suicide is generally deemed unforeseeable to a layperson. See *Chalhoub*, 338 Ill. App. 3d at 539. Our supreme court has repeatedly recognized that "[i]n wrongful death cases involving suicide, the general rule is that the injured party's voluntary act of suicide is an independent intervening act, which is unforeseeable as a matter of law and breaks the causal link between any alleged negligent conduct and the injury." *Stanphill v. Ortberg*, 2018 IL

122974, ¶ 35 (citing *Turcios*, 2015 IL 117962, ¶ 20); accord *Little v. Chicago Hoist & Body Co.*, 32 Ill. 2d 156, 158-59 (1965). This rule, which some cases refer to as the "suicide rule," is ordinarily a rule affecting the proximate causation element of a negligence claim, and it applies "provided the defendant was under no duty to decedent to prevent the suicide."[2] *Turcios*, 2015 IL 117962, ¶ 20; see *Doe v. Doe*, 2016 IL App (1st) 153272, ¶¶ 6-7. Specifically, the suicide rule affects the requirement of the proximate causation aspect of "legal cause" that the type of injury suffered by a plaintiff must be reasonably foreseeable to a defendant as a likely result of his or her conduct. See *O'Donnell v. Bailey & Associates Counseling and Psychotherapy LLC*, 2023 IL App (1st) 221736, ¶ 23. Reasonable foreseeability of injury is also a factor in the analysis of the duty element of a negligence claim, but its focus there is on the preaccident relationship between the parties and whether some form of injury to the plaintiff was reasonably foreseeable as a result of the defendant's conduct. *Colonial Inn Motor Lodge, Inc. v. Gay*, 288 Ill. App. 3d 32, 41 (1997); accord *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 442 (2006) (in the duty analysis, it is the general character of the event or harm that is required to be reasonably foreseeable, not its precise nature or manner of occurrence).

¶ 17     Illinois courts have recognized that a duty to prevent the suicide of another exists in settings where a mental health care professional has assumed care, custody, or control over an individual with recognizable suicidal tendencies. *Winger v. Franciscan Medical Center*, 299 Ill. App. 3d 364, 375 (1998). The rationale for finding a legal duty to exist is that the possibility of suicide is

---

[2] In the cases that apply this rule, the allegedly tortious conduct that resulted in suicide is generally something other than negligently failing to prevent the decedent from accessing the instrumentality by which he or she ended her life. See *e.g.*, *Turcios*, 2015 IL 117962, ¶ 42 (claim for intentional infliction of emotional distress by landlord's pressuring decedent to leave an apartment for which he had a written lease); *Doe*, 2016 IL App (1st) 153272, ¶ 3 (claim that parents negligently failed to supervise minors' social media conversations concerning topic of suicide). The supreme court has also stated that where a plaintiff can show that the suicide was a reasonably foreseeable result of the defendant's conduct, liability may attach. *Stanphill*, 2018 IL 122974, ¶ 35.

reasonably foreseeable in that context, and it is precisely the form of injury that the mental health care professional has undertaken to avoid. As this court has stated:

> " 'Where it is reasonably foreseeable that a patient by reason of his mental or emotional illness may attempt to injure himself, those in charge of his care owe a duty to safeguard him from his self-damaging potential. This duty contemplates the reasonably foreseeable occurrence of self-inflicted injury regardless of whether it is the product of the patient's volitional or negligent act.' " *O'Donnell*, 2023 IL App (1st) 221736, ¶ 40 (quoting *Winger*, 299 Ill. App. 3d at 374).

¶ 18 However, this court has expressly declined to extend to laypersons the duty to foresee the suicide of another and to take action to prevent that person from accessing the means of self-harm. In *Chalhoub*, this court was presented with the issue of whether a defendant-stepfather, who knew that his stepson had recently threatened suicide and received medical treatment for severe depression, owed a duty to prevent his stepson from accessing a handgun kept by the defendant in his bedroom closet, which the stepson used to kill himself. *Chalhoub*, 338 Ill. App. 3d at 538-39. In holding that the defendant did not owe such a duty, this court recognized that unlike psychiatrists with training to care for patients' mental health, "laypeople cannot be reasonably expected to anticipate the mental health consequences of their acts or omissions." *Id.* at 539. Because the stepfather was not a medical professional, "he could not have reasonably been expected to foresee that his failure to secure his handgun would lead to Christopher using it to commit suicide." *Id.* Also important to this court's analysis in *Chalhoub* was the significant magnitude of placing the burden on a layperson of securing a home to prevent any way by which an individual intent on suicide could harm themselves. *Id.* This court noted that while a handgun had been the instrumentality used in the case, the defendant's stepson could just as easily have harmed himself

with a kitchen knife or by an overdose of aspirin. *Id.*

¶ 19     The trial court below relied upon *Chalhoub* to hold that the defendant hotel did not owe a duty to Rona in this case to prevent her from accessing the rope that she used to hang herself. The trial court noted that the employees of the defendant's hotel were laypeople with no expertise to assess the mental health implications of the behavior exhibited by Rona on three isolated instances over a four-week period prior to her death. The court noted that there was no allegation that Rona had explicitly informed the defendant's staff that she wanted to kill herself or that she was mentally ill. The court thus found it unclear how the defendant's hotel staff of laypersons could be expected "to be able to foresee [Rona's] suicidal ideations and take active steps to safeguard against any possible contrivance in pursuit of that disastrous intent."

¶ 20     The plaintiff argues that the trial court's reliance on *Chalhoub* was misplaced and contends that the defendant should not be regarded as a layperson in this context. Rather, the plaintiff argues, the relationship that existed between the defendant and Rona was that of innkeeper-guest, which is considered a "special relationship" that "triggers a heightened duty of care, such that the layperson standard does not apply." The plaintiff argues that Rona's ability to protect herself from harm was limited in part by her submission to the control of the defendant, which nevertheless negligently left the rope hanging from a roof hatch handle in a stairwell where it could be accessed by guests. The plaintiff argues that the defendant should have known that this rope posed an unreasonable risk of harm to guests, particularly because the defendant voluntarily housed large groups of Venezuelan immigrants who had endured past trauma and because its staff had witnessed three episodes of Rona's mental illness exhibited on the hotel premises. The plaintiff asserts that the behavior Rona exhibited in front of the defendant's staff was sufficient to make her suicide reasonably foreseeable to them, regardless of whether the staff members "may or may not possess

special skills in the area of mental health."

¶ 21 In support of this argument, the plaintiff relies on the rule of section 314A of the Restatement (Second) of Torts, which provides that an innkeeper such as the defendant here owes a duty to its guests "to take reasonable action (a) to protect them against unreasonable risk of physical harm, and (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." Restatement (Second) of Torts § 314A(1)– (2) (1965). The duty that is recognized under section 314A on the part of an innkeeper toward its guests by virtue of the "special relationship" between them is an exception to the general rule that one person's awareness that another may be in peril imposes no duty upon him to take action to aid or protect the other from harm. *Id.* § 314A, cmt. b; see also *Quiroz*, 2022 IL 127603, ¶ 34 (explaining common law rule); Restatement (Second) of Torts § 314 (1965) (same).

¶ 22 However, the comments to section 314A make clear that these rules "apply only where the relation [of innkeeper and guest] exists between the parties, and the risk of harm, or of further harm, arises in the course of that relation." Restatement (Second) of Torts § 314A, cmt. c (1965). The rationale for imposing a duty to guard against risks that arise in the course of the innkeeper-guest relationship is that the ability of one of the parties (*i.e.*, the hotel guest) to provide for his or her own protection has been limited in some way by his submission to control of the other (*i.e.*, the innkeeper). See *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 244 (2000). Thus, a key factor when imposing a duty based on a special relationship is the identification of some reason why the defendant can be said to be in the best position to protect against the risk of harm. See *Bogenberger*, 2018 IL 120951, ¶ 39.

¶ 23 The most common instance in which a duty is found to exist due to the special relationship of innkeeper and guest is when a hotel guest suffers a criminal assault by a third party inside the

guest's hotel room or elsewhere on a hotel's premises. See *e.g.*, *Gress v. Lakhani Hospitality, Inc.*, 2018 IL App (1st) 170380; *Dixon v. Caesars Entertainment Corp.*, No. 21-cv-1673, 2022 WL 614941, \*3-5 (N.D. Ill. Mar. 2, 2022). By contrast, this court has rejected the argument that the special relationship of innkeeper and guest gives rise to a heightened duty on a hotel to protect guests from injuries associated with conditions on the hotel premises that are not inherently dangerous, such as the risk that a guest would become intoxicated and fall while traversing a staircase. See *Estate of Ruppel v. Hyeon Jin, Inc.*, 272 Ill. App. 3d 527, 531 (1995).

¶ 24    In *Gress*, which is the case upon which the plaintiff here primarily relies, a hotel guest alleged that she was raped by one of the defendant's employees after he drugged her drink at the hotel bar and then used a duplicate keycard to enter her room after she passed out from intoxication. *Gress*, 2018 IL App (1st) 170380, ¶ 6. She further alleged that another of the defendant's employees had directed the offender to enter her room alone under the guise of fixing an air conditioner, despite knowing that she was intoxicated. *Id.* Her complaint alleged that the defendant was negligent by, *inter alia*, allowing its employee to use a keycard to access her room when she was demonstrably intoxicated, failing to preform background checks on its employees, and failing to provide adequate security. *Id.* ¶ 13. This court rejected the defendant's argument that it had no basis for reasonably foreseeing that one of its employees would commit a criminal sexual assault against a hotel guest. The court found that the pervasiveness of sexual attacks and generalized crime in hotels rendered the plaintiff's attack by an employee reasonably foreseeable to the defendant. *Id.* ¶¶ 22-23. Accordingly, the court held that the special relationship gave rise to an affirmative duty under section 314A to protect against the risk that a third party, including a hotel employee, would enter the plaintiff's room and criminally assault her. *Id.* ¶ 22.

¶ 25    We find the plaintiff's reliance on *Gress* to be inapposite to this case, and, applying the

considerations above, we conclude that this is not a case in which the special relationship of innkeeper and guest is a basis for imposing a duty on the defendant to foresee and prevent Rona's suicide. Unlike in *Gress*, here the risk of harm that the plaintiff alleges that the defendant failed to guard against was nothing that uniquely arose out of the innkeeper-guest relationship. That risk—failing to prevent Rona from accessing a rope that was hanging from a roof hatch in a stairwell—could have existed in any building, not just in a hotel. Although the plaintiff states that Rona's ability to protect herself from this risk of harm was limited in some ways by her submission to the control of the defendant's hotel, we fail to see how her ability to protect herself at the defendant's hotel was any different than it would be in any other place accessible to the public. Likewise, we fail to see any reason particular to the setting of a hotel why the defendant could be said to be in the best position to guard against the risk that Rona would access a rope and hang herself.

¶ 26    Instead, we agree with the analysis of the trial court that *Chalhoub* is controlling on the issue of the duty owed by the defendant to Rona in this case. See *Chalhoub*, 338 Ill. App. 3d at 539. We do not find it foreseeable to the defendant that the rope hanging from the handle of the roof hatch in its stairwell posed an unreasonable risk of injury to persons on its premises. Specifically, it was not reasonably foreseeable to the defendant's staff of laypersons that the rope could be used as an instrumentality of self-harm by a guest with mental illness. To hold otherwise would place a burden of unreasonable magnitude on a defendant such as this. The defendant's hotel staff, which presumably lack any training as mental health professionals and certainly were not acting in a capacity as such, cannot reasonably be expected to draw conclusions about whether a hotel guest has suicidal tendencies and is likely to act on them based upon a few isolated instances of erratic behavior occurring in the presence of differing staff members over a four-week period. In none of these instances was Rona alleged to have specifically stated to the defendant's staff a desire or

intent to harm or kill herself by any means. Further, we especially agree with the point made in *Chalhoub* that it would impose an unreasonable burden on a lay defendant to secure an entire premises in such a way as to prevent a suicide. *Id.* As the defendant here points out, while in this case Rona used a rope meant to close a roof hatch, she could just as easily have hung herself with a bedsheet or a cord from one of the hotel's telephones. A hotel cannot be reasonably expected to guard against every means by which a suicidal hotel guest could commit acts of self-harm.

¶ 27    For these reasons, we conclude that the plaintiff has failed to establish a duty of care owed by the defendant toward Rona to foresee and prevent her suicide on its premises. Because the defendant did not owe a duty in this instance, the plaintiff's second amended complaint fails to state a cause of action for negligence against this defendant and was properly dismissed by the trial court on this basis. See *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 26 (1992) ("Unless a duty is owed, there is no negligence."). In light of our holding that the dismissal was proper based upon the absence of a duty, we have no reason to address the plaintiff's arguments concerning the element of proximate causation.

¶ 28                                   CONCLUSION

¶ 29    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 30    Affirmed.